GEORGE P. WALTON v. CALVIN ENSIGN.

1. AGENCY OF DRIVER NEED NOT BE AFFIRMATIVELY PROVED WHEN OWNERSHIP OF TEAM AND WAGON SHOWN; OWNERSHIP MAKES PRIMA FACIE CASE OF NEGLIGENCE.

   Where a horse owned by plaintiff was ran into and killed by a team of horses and wagon belonging to the defendant by reason of the careless and negligent manner in which the person in charge thereof was driving them, a *prima facie* case of negligence is imputed to the defendant by merely showing that he was the owner of the team and wagon referred to, without proving affirmatively that the person in charge was his agent or employe; and the action of the trial court, in such case, in arresting the case from the jury, and directing a verdict for the defendant because of the absence of such affirmative proof, is a reversible error.

2. WHERE INSPECTION OF WAGON TONGUE WARRANTS CONCLUSION OF LONG DEFECTIVE CONDITION, QUESTION OF OWNER'S KNOWLEDGE THEREOF A QUESTION FOR JURY, ETC.

   Where an examination or inspection of a wagon tongue, alleged to have been in a defective condition and unfit for the purpose for which it was being used at the time of the accident which is the basis of the present suit, is such that a man of ordinary carefulness might well conclude that it had been in a defective condition for a long time, the question as to the truthfulness of such allegations and defendant's knowledge in the premises should be submitted to the jury.

ERROR to Lorain common pleas court.

**F. M. Stevens**, for plaintiff in error.

**L. B. Favoer**, for defendant in error, cited:

*Beard* v. *Railway*, 13-23 O. C. C. 169; *Greeley Bros.* v. *Zeithaml*, 25 O. C. C. 451.

Lorain County.

## MARVIN, J.

The case of George P. Walton v. Calvin Ensign, is a proceeding in error brought here, seeking to reverse the judgment of the court of common pleas. The parties here are as. they were below. The plaintiff in error having been plaintiff below, and so of the defendant.

Suit was brought by Walton against Ensign, setting up that on September 24, 1903, Ensign was the owner of a span of horses, harnessed to a wagon, and that by reason of the careless and negligent manner in which said team of horses were guided and driven by an agent and employe of Ensign, who had them under his charge, they ran away and ran against a horse owned by the plaintiff and killed it.

It is also charged in the petition, that the tongue or pole of the wagon, owned by Ensign, to which these horses were harnessed, and the neck yoke and neck-yoke ring were insufficient for the purposes for which they were used; that they were out of repair, and that that fact was known to Ensign, and that by reason of these negligent acts on the part of Ensign's agent in permitting the team to run away and run into the horse of the plaintiff, and also by reason of the negligence of Ensign in permitting his wagon to be used in this. imperfect state of the pole and neck yoke, Ensign is liable in damages for the value of the property of the plaintiff, injured.

Ensign answered, admitting that he owned the team; that they ran away and killed the horse of the plaintiff. He denies all acts of negligence, and he avers that the plaintiff was himself negligent in permitting his horse to be where it was at the time of the injury.

At the close of the evidence offered on behalf of the plaintiff, which included as an exhibit a part of the wagon tongue or pole, some four and one-half feet long, the front part of that pole, a motion was made to direct the jury to return a verdict for the defendant. The record reads:

"Whereupon counsel for defendant requested the court to arrest the testimony from the jury, and render a judgment for the defendant, on the ground that there was no evidence presented by the plaintiff as to the agency alleged in plaintiff's petition; that there was no evidence presented by plaintiff, showing knowledge on the part of the defendant of the defects in the tongue, as alleged in plaintiff's petition; that there was no evidence showing that there was any defect in the tongue as alleged in plaintiff's petition, and that there was no evidence that the defendant had in any way been negligent."

This motion was sustained by the court, and the jury were directed to return a verdict for the defendant.

Walton v. Ensign.

As has already been said, it is admitted by the answer that the team and the wagon which collided with the horse of the plaintiff and killed it, was the property of the defendant, Ensign.

There was no evidence, no witness testified to any agency of the man in charge of that team. And the court clearly understanding the law to require of the plaintiff that he establish the agency of the man in charge of Ensign's team by evidence, before he could recover, and having failed to do so was not entitled to recover. We understand the law to be otherwise.

It is laid down in Shearman & Redfield, Negligence Sec. 158:

"When the plaintiff has suffered injury from the negligent management of a vehicle, such as a boat, car or carriage, it is sufficient *prima facie* evidence that the negligence was imputable to the defendant, to show that he was the owner of the thing, without proving affirmatively that the person in charge was the defendant's servant. It lies with the defendant to show that the person in charge was not his servant, leaving him to show, if he can, that the property was not under his control at the time, and that the accident was occasioned by the fault of a stranger, an independent contractor, or other person, for whose negligence the owner would not be answerable. This view is supported by decisions, in which it was held sufficient evidence of the defendant's negligence to show that the plaintiff was injured by something falling out of the window of the defendant's house, or from a hoisting apparatus belonging to the defendant."

Supporting the same proposition is the case of *Norris* v. *Kohler*, 41 N. Y. 42. The syllabus reads:

"In an action for causing death in the streets of city, charged to have been by the negligence of the defendant's servants, evidence that the fatal injury was occasioned by a runaway span of horses and wagon, owned by the defendant,—*held*, sufficient to authorize a jury to find persons in charge of such horses and wagon to be his servants, although engaged at the time in a business which appeared to be that of another person, whose name, as carrying on such business, was painted upon the wagon."

And on page 44 of the opinion, the court say this:

"Whether the driver of the wagon was the servant of the defendant, the evidence consisted, first, of the fact of ownership. The property being proved to belong to the defendant, it is urged that a presumption arises that it was in use for his benefit, and on his own account. This argument, I think, is a sound one. The ownership of personal property draws to it the possession. * * * No proof was given

in the present case, separating the ownership from the possession and the presumption of law is, that the wagon and horses of the defendant were in use in his service, and on his account.''

Entertaining the view that the law is as declared in Shearman & Redfield, Negligence, which has been read, and as announced in the case from the opinion of which I have just read, we think it clear that it was error on the part of the court to take this case from the jury on the ground that no evidence had been introduced to establish the agency of the man in charge of this team.

And another ground on which the court took the case from the jury was, that there was no evidence showing knowledge on the part of the defendant of the defects in the tongue as alleged. As has already been stated, a part of that tongue, the part which it is claimed was defective, was in evidence, and it is a part of the bill of exceptions; we think an examination of that tongue would show that one might well think that it had been in a defective condition for a long time, and if that be so, the jury might well have found, if they had been permitted to pass upon the question, that the owner of that team knew of the condition of that wagon pole. The neck yoke itself was not introduced in evidence, the ring of the neck yoke was not introduced; but the flange on the pole is defective; it is in a bad condition, and apparently has been so for a long time, and surely then should have been submitted to the jury, the question, whether in the condition that wagon pole was, from its appearance, whether that did not make it probable that the owner, if a man of ordinary carefulness, would have known of its condition. The pole itself was evidence enough to go to the jury for them to pass upon the question of whether the owner had knowledge of its condition.

Reading further from Shearman & Redfield, Negligence Sec. 2, from which I have already read:

''Acquiescence in the constant use of a vehicle may make the owner responsible for the negligence of those using it in connection with his business. And where an injury is caused by defects in a vehicle or its loading, which the owner was bound to remedy, it is immaterial whether the persons in charge were his servants or not.''

It should be said that the evidence shows that while this team was running, the pole of that wagon extended out to the front of the horses five feet or more. The condition of the pole was such, is such now, as that one looking at it knows that it is now defective; the fact that it is in the condition it is and has the appearance it has is well calculated

Walton v. Ensign.

to establish the proposition it had been in that negligent condition for a long time, and we think it was clearly error for the court to direct the jury to return a verdict for the defendant. The judgment is reversed and the case remanded to the court of common pleas.

**Winch** and **Henry, JJ.,** concur.